

**The following constitutes the order of the Court.**

Signed April 26, 2005                                             United States Bankruptcy Judge
_____

```
              IN THE UNITED STATES BANKRUPTCY COURT
               FOR THE NORTHERN DISTRICT OF TEXAS
                        DALLAS DIVISION


IN RE:                          §
                                §
STEVEN H. KIGHT and MARY L.     §    CASE NO. 04-36917-SAF-7
KIGHT,                          §
     D E B T O R(S).            §
                                §
_____§
KRISTY KENNEDY,                 §
     PLAINTIFF(S),              §
                                §
VS.                             §    ADVERSARY NO. 04-3579
                                §
STEVEN H. KIGHT, et al.,        §
     DEFENDANT(S).              §
```

<u>**MEMORANDUM OPINION AND ORDER**</u>

Kristy Kennedy objects to the discharge of her claim against Steven H. Kight and Mary L. Kight, the debtors. Kennedy contends that the Kights sold a house to her through fraud, false pretenses or false representations, making the resulting debt non-dischargeable under 11 U.S.C. § 523(a)(2)(A). The Kights concede that they provided Kennedy with an inaccurate statement regarding repairs to the house, but maintain that they did not

commit fraud.  The court conducted a trial of this adversary proceeding on March 25 and 28, 2005.

The determination of the dischargeability of a debt constitutes a core matter over which this court has jurisdiction to enter a final order.  28 U.S.C. §§ 157(b)(2)(I) and 1334.  This memorandum opinion contains the court's findings of fact and conclusions of law.  Bankruptcy Rule 7052.

Section 523(a)(2)(A) provides an exception to the discharge of a debt for money or property, to the extent obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."  11 U.S.C. § ·523.  The discharge exception for false pretenses or false representation requires misrepresentations that are "(1) knowing and fraudulent falsehoods, (2) describing past or current facts, (3) that were relied upon by the other party." Matter of Allison, 960 F.2d 481, 483 (5th Cir. 1992). Section 523(a)(2)(A) "requires justifiable, but not reasonable, reliance." Field v. Mans, 516 U.S. 59, 74-75 (1995).  The creditor must have sustained a loss or damage as a result of the representation. In re Rea, 245 B.R. 77, 85 (Bankr. N.D. Tex. 1990).

To prove actual fraud, the objecting creditor must prove that (1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the

-2-

creditor; (4) that the creditor relied on the representations; and (5) that the creditor sustained losses as a proximate result of the representations. <u>Recoveredge, L.P. v. Pentecost</u>, 44 F.3d 1284, 1293 (5th Cir. 1995).

A debtor's silence regarding a material fact can constitute a false representation actionable under § 523(a)(2)(A). <u>A.T.& T. v. Mercer (In re Mercer)</u>, 246 F.3d 391, 404 (5th Cir. 2001).

Kennedy must establish that the debt is excepted from the Kights' discharge under § 523 by a preponderance of the evidence. <u>Grogan v. Garner</u>, 498 U.S. 279 (1991).

On May 21, 2002, Kennedy and the Kights entered a residential contract for Kennedy to purchase the Kights' house and real property located at 7316 Fenton, Dallas, Texas 75231. Kennedy had never purchased a house before. She retained Wayne Whitter, a home inspector, to inspect the property. Whitter inspected the property on May 23, 2002.

Whitter reported to Kennedy that "excessive moisture levels were detected in all framing members and there is mold, fungus and mildew present. Inadequate crawl space ventilation and plumbing leaks are adding moisture. There is structural wood rot under the master shower. Recommend installation of a mechanical ventilation system, controlled by a humidistat." Whitter also reported that ducts needed to be airtight and cleaned and that an electric air cleaner did not work. He recommended the removal of the electric air cleaner, the repositioning of an air filter and

the professional cleaning of the ducts.  He recommended other repairs, as well.

On May 30, 2002, Kennedy and the Kights modified their contract.  The Kights agreed to make certain repairs, including ventilate the crawlspace to eliminate and prevent mold, clean return air duct in bedroom hall and plenum, make duct system airtight and have the unit cleaned and serviced by a licensed technician.  The Kights also agreed to retain Joseph Fiore of A & M Envirotech, "a certified mold expert," to inspect and take air and mold samples on Monday, June 3, 2002.  Fiore would submit the samples to a laboratory, with the results expected by June 6, 2002.  Based on those results, Fiore would suggest a remediation plan.  The plan and lab test results would be forwarded to Kennedy, who would have twenty-four hours to review the plan, and could, during that time, terminate the contract.  The Kights agreed to "strictly comply with the remediation and repair as approved by [Kennedy]."

The Kights retained Fiore's services.  Fiore testified that he did not represent himself to be "a certified mold expert," although Steven Kight understood Fiore to represent himself as a mold expert.  Fiore attended classes regarding mold remediation but he held no certifications.  He testified that he cleaned the HVAC system.  He also testified that he consulted with a laboratory regarding mold at the house.  He testified that he may have given Steven Kight the names of air circulation specialists.

-4-

He recalled that mold remediation work had been completed at the property.  He did not recall observing any other mold or moisture problems.  He did not recall noticing any air flow or air blockage problems or any problems with the vents under the house.  He testified that his common practice would be to alert the homeowner if he discovered a mold or moisture problem.

On June 19, 2002, Steven Kight sent by email to Chuck Briant, Kennedy's real estate agent, a document entitled "7316 Fenton Drive Home Repair Report."  Kight testified that he felt he should inform Kennedy about the work performed at the house.  Kight prepared the report, writing it late one night.

With regard to the ventilation, Kight wrote:

> Joseph Fiore, President of A & M Envirotech, Inc., consulted with two air circulation specialists.  It was the air circulation specialists' judgment that if this house has four or more air vents, between the underside of the house and the outside, there is no need for an air circulation system.  This house has nine air vents between the underside of the house and the outside (one is under the patio deck).  Given the number of air vents, Joseph Fiore agrees with the air circulation specialists' recommendation.  Joseph Fiore did recommend that the air vents be cleared of anything, on the outside, that could block the flow of air.  Per Joseph Fiore recommendation, every air vent was checked for blockage, and anything that could block the flow of air was trimmed back or removed.

Kight did not ventilate the crawlspace.

The statement was false and misleading.  Steven Kight knew the statement was false and misleading.  He intended to partially deceive Kennedy.  Fiore did not consult with two air specialists.  Rather, Fiore provided the names of two air specialists to Kight.

Kight tried calling them.  He spoke to one, but either did not talk to the other one or the other one declined to provide advice.  An air specialist did not tell Fiore that the house had a sufficient number of air vents.  Fiore did not tell Kight that he agreed with any assessment of the adequacy of the number of air vents.  Kight gathered the information about the number of air vents.  Kight misrepresented to Kennedy that Fiore, a mold expert, obtained the information and agreed with the assessment.  Kight used the misrepresentations to deceive Kennedy about the decision not to ventilate the crawlspace.  But Kight did not deceive Kennedy that he was not ventilating the crawlspace.

Fiore did address a discovered mold problem as required by the amended contract.  Fiore forwarded a mold sample to a laboratory.  After testing, Kight implemented a remediation program for the mold from the master bathroom shower area.

The Kights had also agreed to clean the return air duct in the bedroom hall and plenum.  In his report, Kight stated that Fiore cleaned the return air duct in the bedroom hall and plenum.  Fiore testified that he did not do that work.  Kight testified that he thought Fiore's invoice covered that work.  Fiore did clean the air conditioning unit.  Kight also reported that he addressed an air filter placement problem.  But he mislead Kennedy that Fiore did that repair work.  Kight's trial testimony about the air filter was ambiguous or confusing.

Briant shared the report with Kennedy.  Kennedy understood

that Kight did not ventilate the crawlspace.  Kennedy asked Whitter to reinspect the house.  She testified that Whitter refused to reinspect the house.  Whitter did not recall her request for a reinspection, but he testified that he commonly does not reinspect houses.  Kennedy testified that she then discussed the report with Briant.  Kennedy said that based on her conversation with Briant, she accepted that the ventilation work would not be done.  Briant did not testify.

Three days after receiving the report, on June 22, 2002, the parties again amended their contract.  The second amendment addressed repairs to gutters and the installation of a bath tub.  The amendment did not address the crawlspace ventilation matter.  Then, on that same day, the parties executed a hand-written amendment addressing master bathroom repairs and remodeling.  That amendment did not address the crawlspace ventilation matter.

Knowing that the ventilation work had not been done even though Whitter recommended the work, Kennedy closed the transaction on June 26, 2002.

Kennedy painted the house in August or September 2002.  She did not discover any mold.  Sometime after closing, Kennedy noticed that certain items had not been repaired.  She wrote a letter to the Kights, dated September 20, 2002, detailing those items.  She did not mention a mold problem.  Kennedy discovered mold on the property sometimes after that.  She testified that by January 2003, her clothes in a closet and shoes had been covered

with mold.

Halet Poovey, an industrial hygiene specialist, testified that he found aspergillus mold, not black mold, on the premises and recommended that Kennedy perform remedial work.  He could not tell how long the mold may have been present.  Whit Hyde, vice president of a mold remediation company, testified that remedial work for the areas included in the crawl space would cost $21,021.53.

Kennedy testified that she could not afford to make those repairs, yet she spent over half those costs for other home improvements and for her attorney.  Kennedy filed a law suit against the Kights.  She amended that complaint to add claims against Briant, alleging that she relied on Briant's recommendation to accept the Kights' report and close the transaction without the ventilation work in the crawl space. Kennedy settled her dispute with Briant.  Kennedy did not sue Whitter.  Kennedy did not retain the service of any other property inspector before closing the transaction.

Mary Kight relied on Steven Kight to perform the work needed to close the transaction.  Steven Kight acted as Mary Kight's agent.

The mold remediation work for the crawl space ventilation area would cost Kennedy $21,021.53.  The expert reports associated with that work cost $3,180.00.  The cost of the air conditioner repairs, the duct work cleaning and the installation

-8-

of a ventilation fan cost less than $2,000.00.  Kennedy estimates the damage to her clothes and shoes to total $1,000.00.

The gravamen of the claim therefore centers on the ventilation of the crawl space.  Kennedy has not established that she relied on Kight's report to close the transaction.  If she did rely on the report, she has not established that she did so justifiably.

Steven Kight did not ventilate the crawl space.  He made material misrepresentations about why he did not ventilate the crawl space.  But he did not do the work.  Kennedy knew he did not do the work.  Kennedy had the report of her own inspector recommending that the work be done.  Kennedy knew that Kight's decision not to do the work directly conflicted with her own inspector's recommendation.

Kennedy also knew that the Kights had contracted to perform that work.  Kennedy had a right to enforce the contract or not close the transaction.  Nevertheless, Kennedy chose to enter two additional written amendments to the contracts addressing repairs but not addressing the crawl space ventilation work.

Kennedy testified that she relied on Kight's statements that the work need not be done because of a report of a mold expert after consulting with two air specialists.  Kennedy testified that had she known that Kight, not a mold expert, consulted with one, not two, air specialists, she would not have accepted the decision not to perform the work.  While Kight deceptively and

intentionally mislead Kennedy, Kennedy did not just read and accept the report.  She consulted with her real estate agent, after her inspector declined to reinspect the property.  She testified that she relied on the statements of her agent.  Indeed, based on that reliance, she filed a law suit against the agent, and settled with the agent.

Kennedy knew that her inspector recommended the work be done.  She had a contractual right for the work to be done.  She knew that the work was not done.  She had the right to have the property reinspected.  She had the right not to close the transaction.  She consulted with and relied on her real estate agent.  When she closed, she knew she was buying the house "in its present condition" as provided in the parties' contract, except for the repairs the parties agreed the Kights would make.  The Kights did not make the ventilation repairs.  Kennedy knew that, but closed anyway.

On this record, Kennedy has not established by a preponderance of the evidence that she relied on Kight's report or, if she did, that she relied justifiably.  While Kight deceptively mislead Kennedy about the reasons the work had not been done, he did not misrepresent to her that the work had been done, when it had not been done.  That would have been a different case.

Kennedy argues that she had no obligation to perform a further investigation after Kight sent the report.  But she

-10-

cannot justifiably rely on a seller's report about why he is not performing contractually required repairs when the buyer's inspector recommended the repairs be made.

With regard to the other matters, standing alone, they are too inconsequential to support a § 523(a)(2)(A) judgment absent reliance or justifiable reliance on the crawl space ventilation issue in this case.

As a result, Kennedy has not established that any debt against the Kights arising from the purchase of the Kights' house is excepted from discharge under 11 U.S.C. § 523(a)(2)(A).

### **O R D E R**

Based on the foregoing,

**IT IS ORDERED** that this adversary proceeding is **DISMISSED.**

###END OF ORDER###